The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. I want to say what an honor it is for us to have Judge Quattlebaum with us. This is his first panel sitting and all of us know he's going to become a most distinguished member of this Court. So with that we will prepare to hear our first case, Perez v. Cissna. Mr. Banas, when you're ready, sir. Thank you, Honor. And may it please the Court, my name is Brad Banas and I represent the because it relies on an ultra-virus permanency requirement and to the extent that permanency requirement is authorized by Congress, it, Mr. Perez's custody order satisfies what the agency has deemed as permanent under its policy guidance. The first question this Court has to ask or answer is a pretty straightforward one. That is whether there is unmistakably clear congressional intent to limit custody orders for the purpose of special immigrant juvenile status to those that are deemed permanent under state law. I say this is a straightforward question because it's a straightforward analysis of statutory interpretation. This Court's consistent. When we want to find congressional intent, we look to the text, the structure, and the history of the statute in that order to figure out what congressional intent is here. So first, the text of this statute, the relevant text, is found at 8 Special Immigrant Juvenile Status and you'll see other subsections, but I don't believe there's a dispute between the parties that Mr. Perez satisfies the remaining eligibility requirements for SIJ or Special Immigrant Juvenile Status. The only question here is the language that says, the plain text says, any immigrant who is in the United States whom a juvenile court has placed under the custody of an individual is eligible. That's the key language, placed under the custody of an individual. Two things jump out about that language on the plain text. One, there's no temporal requirement there. It doesn't say what kind of custody order. It doesn't say temporary. It doesn't say permanent. And as this court said... But you're burdened to establish your eligibility for this particular status? Yes, Your Honor. And you'd have to have some kind of custody order? That's right, Your Honor. And does what you have in hand bear any of the indicia of a custody order? Yes, Your Honor. What are the terms of the custody? It awards physical custody of Mr. Perez to his brother. And it indicates that this custody order shall remain in place and enforced... That would be true, but what about the parents? Wouldn't they have some say in the custody? Your Honor, at this phase, in this type of custody order, the parents aren't notified. I would also note the unique nature of the parents in this situation. They're foreign nationals who are... I'm just asking, you know, how we can have a custody order that never gave notice to the parents? Well, Your Honor, North Carolina law provides for this particular type of custody order to be ex parte. And in this situation, the court, and in the record here, is the complaint that was filed for custody. And it goes through a lot of the facts that Mr. Perez has faced through his life, the abuse from his parents, and the abandonment from his parents. There's been a lot of talk about separating families. And the statute here, 1101A27J says, whose reunification with one or both of the immigrant's parents is not viable. Would we be separating families with your interpretation of this provision? Your Honor, I think Congress is perfectly fine separating kids from parents that have the custody order. But we don't know that. You haven't given any notice to the parents. We don't know that they've abused or abandoned anybody. Your Honor, in 2008, or excuse me, 2005, as part of the VAWA Act, Congress expressly provided protection to these types of petitioners and said, no agency, no federal government agency can require an SIJ applicant to reach out to a parent who has abused and abandoned them. That's found at 8 U.S.C. 1357H. For foreign nationals abroad, Your Honor, due process is what Congress says it is. And that's what makes this case very different. That assumes there was an underlying order that was adequate under the Act. That's for purposes of the SIJ application, correct? Your Honor, the order here is at 129 in the record, and we believe that checks off every box on the SIJ eligibility requirements. I would also note that we are limited here by the chainery doctrine to the rationale of the final agency action of the Administrative Appeals Office. We can only, this Court can only affirm if the rationale that the agency actually gave is reasonable, is rational. What in the record made, created an emergency when the motion for a TRO was applied? I mean, the minor at that point had been in the United States for over a year and a half. What created the emergency based on what's in the record? Your Honor, that's a determination that the State Court judge made. Is there anything in the record that there was an emergency at the time the TRO was filed? Your Honor, I can tell you this, the complaint was filed five, almost six months prior to the emergency application. The year after he had been in the United States, correct? Your Honor, he was in the custody of the Office of Refugee Resettlement for a bit. He was then transferred to his brother in North Carolina. He was also in removal proceedings with the Amidst all of that, yes, a year and a half objectively seems like a long time. But when you're dealing with a 15-year-old kid who has to deal with all of this situation being passed around from agency to agency, he did seek a custody order in a timely fashion. But what about the emergency? There was a filing for a TRO, which is an emergency ex parte order. What was the emergency based on what's in the record? Your Honor, I don't know. The fact is, is that the state court judge made that determination. And the agency here isn't contesting that. The agency, to its credit, doesn't see itself as an appellate body of the state court. And if you look at their policy guidance that's in the record, you'll see they instruct their adjudicators to trust the state juvenile court judge to make determinations of juvenile court law because it's different in every state. There's something odd about the timing that this was brought suddenly after he'd been in the country for a year, and it's brought six days before he turns 18. It was brought six months before, wasn't it? That's right, Your Honor. The actual complaint was filed six months, and I believe the motion for a custody was filed six months. It takes time to get these things through in North Carolina, as well as South Carolina, as well as Virginia. And this is a district court for Mecklenburg County in North Carolina, which is the Charlotte area. Yes, Your Honor. Is that correct? And the petitioner is the brother of the child? Yes, Your Honor. And he's what, two or three years older or something? I think he's five years older, Your Honor. That's right. He'd been in the United States much longer. And he must have lived there in Mecklenburg County? Yes, Your Honor. And the courts in North Carolina are the juvenile courts? That's right. There's no contest of whether this is the appropriate court to enter this order. They're the domestic relations courts? That's right, Your Honor. They're the family court. That's what we call it in South Carolina. And again, the... Oh, I'm sorry. Oh, the family court, you call it South Carolina. You're a South Carolina lawyer. Yes, Your Honor. I pretend to be. But I just want to point out that the only dispute here, and again... That's the only... And this, what is it, January the... June the 29th, 2015. That's the custody order? That's right, Your Honor. That's the only custody order that's been issued in this case? Your Honor, we also have a nunk-pro-tunk order. You have a nunk-pro-tunk order, but it goes back to this order. That's precisely right, Your Honor. Custody order June 29th. That's right. And it was intended, if you look at the face of it, it was intended to last until the child reached the age of majority. It says this is intended to be in force until the next hearing. Well, the next hearing was after he turned 18. That is what the agency's policy guidance requires. In page 187 of the record, you'll see their policy guidance. And it says a permanent order is the general rule. But our exception to that rule is that as long as the juvenile court intends it to last until the age of majority, that's sufficient. And that's kind of our secondary argument here because... I understand what the governor's primary position is that this is not a It's a temporary order, and they weren't going to accept a temporary order. That's right, Your Honor. That's the holding, so to speak, of the... Is that the whole thing? They say this is not a permanent order, a permanent custody order, and that they need a permanent custody order. I believe the government's position is that under... They're going to get up here and challenge you. But is that your understanding of their position? My understanding of their position is that they say 101-827-J-i requires a order that is permanent under state law. This is a temporary, according to the face of it, it's an order granting ex parte temporary custody. That's right, Your Honor. To the brother. That's right. And again, the document speaks for itself. Is the word permanent in the statute anywhere? No, Your Honor.  Does it show up in something else that's not a regulation of the Department of Homeland Security? The closest thing we get to is the policy guidance, which is not a product of notice and comment rulemaking. It's published... When you say custody order, doesn't the plain meaning of a custody order envision certain indicia of formality? For one thing, the terms of the custody. Who has custody? Who has visitation rights? When do those visitation rights attach? But it would be odd in a statute which says that you've got to have... And this is a requirement, reunification with one. It's not just a custody order. It has to be a custody order with a finding that reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law. Now, the question I have is whether that finding, which is right there in statute, and it's not written in the disjunctive, it's written in the conjunctive, the reunification has got to be not viable. We don't know that because how can this be a qualifying... It's your burden. And how can this be a qualifying order that you need to produce in order to claim this special status when one of the findings that is required under the statute with respect to reunification with parents is not in the order? Well, Your Honor, there is language about the non-viability of reunification in the custody order. So that's first. The second thing I would point to... Where is it? It's on page 129, Your Honor. Reunification with the biological parents is not in the order. Is there any notice being... Was any notice given to parents? For this particular ex parte order, no, Your Honor. It wasn't. But I think I want to take one step back and note that Congress did use the term custody order. And Your Honor properly pointed to what is that common understanding of that? But you're not reading the whole statute. Your Honor, I think that we satisfy that on the face of the order. And again, we have to go back to what the AAO says. Accordingly, the ex parte emergency order was not a qualifying juvenile order at the time it was issued because there's no finality of the proceedings. What are you reading from there? Page 22 of the record. This is actually the final agency action we're challenging. Of the joint appendix? Yes, Your Honor. I'm sorry. Joint appendix, JA. That's the rationale they gave. They limited it to this has got to be a permanent order and that's it. Don't they just say... Don't they rather than say, and it must be a permanent order, saying this temporary order, an emergency TRO without notice doesn't qualify? They don't issue a holding that it looks like at page 4 of their order, that's what they're saying, that this ex parte emergency order was not a qualifying order. Not that going forward it has to be permanent. Your Honor, I'm not going to disagree with your characterization. We can read the same language. I think they're saying that a temporary ex parte order is not sufficient because it's not permanent. And that simply, there's no... I don't think so. I think that Judge Quattlebaum makes a good point. They're not saying permanent or otherwise. They're saying this particular order is not qualifying. And it's not qualifying for two reasons. Number one, it lacks the indicia of what we normally think of and what state law really envisions North Carolina law envisions as your usual custody order. It doesn't seem to me that this is, that this bears the earmarks of a usual custody order. And it falls short, the order falls short, in my view, with respect to the reunification of the parents because no notice was ever given them before this order was issued. And your Honor, again, I'll cite to 8 U.S.C. 1357H, Congress said no one can require an S.I.J. applicant to reach out to a parent or someone who's abused or abandoned them, period. That's Congress telling us that, okay? And again, due process concerns. This also is not a termination of parental rights. This is a temporary custody order. That's all this is. And I think that your point, Judge Wilkinson, about this isn't a typical custody order, I would expect to see visitation, weekends, that sort of thing, is a very good point. And it's different in every single state. And that's the other important part of the plain language here, is it's using a term that derives from an area of law that is in the strict purview of the states. But it uses the term custody. The plain meaning of that term is what we normally think of as a custody order. And that's not present here. And the deficiency of it is further underscored by the difference between 50A.204, which governs temporary ex parte orders or whatever, and 50A-201, which embodies a final determination of custody. And as I understand it, the statutory provision that was cited in the custody order and that you're relying upon is 50A-204. And that's what North Carolina law envisions as nothing more than a temporary protective order. It's not finally adjudicative of custody rights in any sense. And, Your Honor, I would point you to the Ojo case from this court two years ago that says when Congress uses a term that derives from domestic relations law, if an agency wants to limit it to something, we have to show unmistakably clear congressional intent to limit it, okay? And the plain language of the statute has no temporal requirement. The structure of the statute, we see Congress a few provisions away saying, for kids in HHS custody, state court custody orders mean nothing. We're going to give them no credence. I see my time is running out. May I conclude? And so, Your Honor, I think this is a question of statutory interpretation and the text, the structure, and the history of statute show an unmistakably clear congressional intent to expand protections for children like Mr. Perez. And for that reason, we'd ask that you close the hearing. Ms. Wall, I'm pleased to hear from you. Good morning. May it please the court, Chatul Wall for the appellee. We ask this court to affirm the decision of the district court upholding the agency's finding that Mr. Perez did not meet the eligibility requirements for SIJ classification. The statutory text, structure, and intent do make clear that Mr. Perez's order that he submitted did not meet the requirements. It was deficient. This court points out and agrees with the district court, it sounds like, from Judge Wilkinson's questions. The juvenile court actually did not have the jurisdiction under North Carolina's statutory scheme. The order itself does cite to the jurisdictional provision of 204. In North Carolina, the statutory scheme and the state cases make clear they work together. The district court in North Carolina didn't have jurisdiction? Did not have jurisdiction to make a custody determination. Excuse me, Your Honor. To make the kind of custody determination that the statutory scheme here requires. The statute clearly... It made a custody determination, though. It made a ruling. We have an order here of the district court in Mecklenburg County that says it's in the minor child's best interest for that it is in Felipe Perez Perez's best interest for temporary and permanent custody to be awarded to the plaintiff, and it granted emergency temporary custody and control of the minor child to his brother. I mean, there is a custody order of the district court of Mecklenburg County, June the 29th, 2015. Yes, Your Honor, and... That's the only court that's made such an order. Yes, Your Honor, and it made that order under the jurisdictional authority within that order that it cites, which is 58-204, and that jurisdictional authority gives it authority under emergency jurisdiction in a limited circumstance to do several things. One is to make a emergency ex parte determination for a very limited time, but it must also set a subsequent hearing and also order that notice be provided to the parties who are going to be impacted here, Mr. Perez's parents. The juvenile court did those things. It set a hearing date for within three weeks after that order was issued, and it ordered... And that order of the court said the defendants, that's the parents, right? Yes, Your Honor. And abandoned, neglected, and abused Felipe since the age of eight from 2005 until December 2013 by, among other things, stopping to provide safety, shelter, and food for him, and went on and on in that paragraph eight on page two of the order, JA-128. Yes, Your Honor, and also in that paragraph, it says, upon information from the minor, quote, unquote. All of the information... I'm sorry. Before it, that's a judgment, an order of a court of the United States, of the court of North Carolina, district court. It is... Do you agree it's the juvenile court, as mentioned in the federal code? It is the juvenile court, and it made that finding for limited time in an ex parte proceeding only until July 22nd, when it could make a custody... The court made a contrary determination. It could not. So the way the statutory scheme is set and the cases in North Carolina make clear that when a jurisdictional... When a jurisdiction... I'm sorry. When a juvenile court takes jurisdiction under 50-204, it has the authority to do a couple of things. One, it has the authority to enter an order for a... But you're raising issues of state law here, right? Because the federal... You aren't an appellate court for the state court. I mean, there's a... You can appeal... Somebody can appeal an order of the district court of Mecklenburg County, presumably to a district court of appeals in North Carolina, or the Supreme Court of North Carolina. But that doesn't come up to a district court or an appeals court in the United States. Your Honor, the text of 110127J directs us to the state law. And it doesn't say anything about permanent custody. Well, when a custody determination... And the regulations don't say anything about permanent custody. You have that, it seems like, in the manual. There's a policy manual that you all have. The statutory scheme is clear that finality is required. A court of competent jurisdiction is required. The text... You said this is a court of competent jurisdiction. It's a juvenile court of North Carolina. So that when we go to the statute... Legally called the district court for Mecklenburg County. Your Honor, when we go to the statute, we are required to obtain several items, right? First, we have to get a court to place a juvenile in the custody of a person or an agency. And this court order did that. This court did not make a custody determination. In the face of it, it does that. Emergency temporary custody and control of the minor child. The terms of this order shall remain in effect until the court date below. They granted the custody to the brother of the child. Let me ask you this. The only qualifying order that they're pointing to is the order of the juvenile court. Is that correct? Yes, Your Honor. That's what... They have to produce a custody order under the statute. It's their burden. And the only qualifying order that they're pointing to is the order of the juvenile court on whatever date it was. Correct? It's not qualifying under the statute, but that is the only order that they point to. That's what they claim. That's what they've hung their hat on, right? Yes, Your Honor. That order of the juvenile court. On June 29th. Yes, Your Honor. And you're making two points with respect to that order. Number one, it was an ex parte temporary order, which under North Carolina law is simply not a final determination of anything. The final determination of the matter was going to be determined at the hearing, which the temporary order envisioned. The temporary order didn't envision that it was awarding custody to anyone or anything. All it was doing was entering a protective order until the more formal hearing could be held and would involve more of a plenary determination of custody rights and what the terms of the custody arrangement might be. Yes, Your Honor. And that's all I think that you're trying to say. Now, okay, so one problem you have under the statute is that this ex parte temporary order did not bear the indicia of a custody order, but rather only envisioned a hearing at which custody would be later determined, right? Yes, and the order states that where it says the hearing to determine custody of the minor child will be held on July 22nd, 2015. That was going to be the custody order. Okay. The other problem is that under this statute, there has to be some kind of finding with regard to the parents, and that is that the unification of the child and the parents is not viable. That's correct. All right. Now, with respect to this ex parte temporary order, were the parents ever notified of anything? No, Your Honor. They were not notified that there was even a hearing, nor were they given an opportunity to be heard as to these allegations that were made by Mr. Perez. So, you know, the problem is we're separating children from parents without even giving the parents an opportunity to be heard. That's correct, Your Honor. And in this situation, we are taking away their parents' rights to be heard. There is no due process here. And as to the allegations that Mr. Perez cannot be made to contact them under 1357H, that's frankly inapplicable at this stage of the process. 1357H only applies after the SIJ statutory requirements are made. Once a qualifying order is obtained, can 1357H be applied? It's before the agency process where Mr. Perez could not be made to contact his parents. There are two prongs to this statute. In order to have a qualifying order for SIJ status, you have to produce an order which is a custody order, not simply an ex parte, temporary protective order that envisions a custody hearing. Something that envisions a custody hearing is not a custody order. And then the other... Nothing in your regulations or in the statute that says that. Your... Your Honor, the agency... He's making a good case for you. He's making a good argument for you. I'll give him that. But the statute doesn't say that. And the regulations don't say that. And your policy manual don't say that. Your Honor... This order says it's a custody order. Your Honor... In the case of it, it hereby grants emergency temporary custody and control of the minor child to his brother. Your Honor... And there's a nunk pro trunc order entered by the judge after that and said it's as permanent as it could be. It's as permanent as it's allowed to be under North Carolina law. Correct? You don't challenge the nunk pro trunc order. Yes, we do, Your Honor. You do challenge it. Yes, Your Honor. I don't challenge it. The nunk pro trunc order can only be entered to correct mistakes, not to modify orders. You say that under North Carolina law, the judge couldn't enter a nunk pro trunc order. A judge can certainly enter a nunk pro trunc order. And the nunk pro trunc... Yes, Your Honor. And a nunk pro trunc order can only be entered to correct mistakes of recording. A nunk pro trunc order cannot do what a previous order could not do. Under North Carolina law and... Are you a North Carolina lawyer? No, Your Honor. I'm a Georgia lawyer. You could go to the North Carolina Court of Appeals and said that judge over there in Mecklenburg County tried to enter a nunk pro trunc order and it's illegal. But it's part of the record here. Your Honor, I'm not alleging that the nunk pro trunc order is illegal. It states that the order of judgment, nunk pro trunc, August 28, 2015, the order granting temporary custody, temporary custody to plaintiff was as permanent as possible under North Carolina law. We agree with that. Good. We agree with that. It's as permanent as... I'm sorry, not to interrupt. It's as permanent as possible under North Carolina law. As permanent as possible under North Carolina law. And that's the juvenile court of North Carolina. Yes, Your Honor. Mecklenburg County entered an order that was permanent as possible under North Carolina law. Yes, Your Honor. That should make you happy. And let's focus under North Carolina law. North Carolina law makes it very clear how permanent that order was. It had no finality outside of those six days. In North Carolina law, the state cases there, as well as the statutory provisions working together, tell us 50A108... As permanent as possible is not permanent. And Your... As possible is not permanent. Correct. But... Not in the statute. And permanent is not in your regulations. Your Honor. It's in the policy manual that you... And if you get anything out of that, you wouldn't need the... Well, it's not in the statute. And if it was in a regulation, you'd be entitled, if you all wrote it up and gave proper notice. It would be entitled to what we call Chevron deference. Where are the parents in all of this? And if it's in your policy manual, it wouldn't even be entitled to Chevron deference. It would be entitled to something else. Skidmore deference, maybe. But you don't even have the word permanent until you get over there in your policy manual. Your Honor, the word permanent order is not even in the agency decision to not... The judge in North Carolina says it's as permanent as possible under North Carolina law. We can agree on this. You don't agree with that because you're not even a North Carolina lawyer. I'm not either. Your Honor, I'm a Georgia lawyer. But we can agree on... Ms. Wall, you just mentioned that both the agency and the AAO don't state, do they, that it must be a permanent order. They simply find that this particular order, which is an ex parte emergency order without notice, isn't a qualifying order. Is that correct? Yes, Your Honor. At the Joint Appendix 22, page 3 of the AAO decision, it makes clear that this order is not qualifying because there's no finality to the proceedings. And it also references the TVPRA, which does say that an in loco parentis placement, such as the one here, is not sufficient for SIJ eligibility. There is no requirement that the order say this is a permanent order. It's the North Carolina law that actually frames the issue here. For us, we look at the 110127J statute, we look to what's required, a custody placement, and in the conjunctive, a reunification not being viable with the parents. And we don't know if that happened. It's not a custody placement. Your Honor, it is not. It's maintained. The order of the Mecklenburg County District Court is not a custody placement. Your Honor, it's... You're saying it's not worth papers written on. That's something for a North Carolina court to... No, Your Honor. It actually is very much worth the paper. Absolutely. It's maintaining the status quo for the days that it was there. Mr. Perez can't... Contemporarily, as your opponent put in there, the statute doesn't say anything about time. It says you need an order. With finality. You got an order. And you got a non-protonic order explaining it further, saying it's as permanent as possible under North Carolina law. Yes, Your Honor. End of story. It's as permanent as possible under North Carolina law. Yes, Your Honor. We're not an appeals court for the District Court of Mecklenburg County. Mr. Perez came to the United States in January of 2015. He went to live with his brother in February of 2015. I'm sorry, 14. He came in January of 2014, went to live with his brother in North Carolina in February of 2014. It's not until June 29th, 2015, six days before he turns 18, that he gets this emergency ex parte limited order. It's a preliminary order. The timing is fishy, to say the least. But let me ask you again, because I still don't know, where are the parents in all of this? Because he has the burden of producing... The petitioner has the burden of producing a qualifying order under the statute. And one of the criteria for a qualifying order is that reunification with the parents is not viable. Now, where has that finding been made? It has not been made, Your Honor. There is a state... How can it be qualified? Could I finish my question? I'm happy to answer either question if I know what the question is. You'll have a chance to answer them both. My time is... I only have two and a half minutes left. That's all right. Could I just ask, where are the parents in this whole thing? Because he has the burden, petitioner has the burden of producing a qualifying order. One of the criteria for a qualifying order, in addition to being a custody order, is that it's got to be... There's got to be a finding that reunification with the parents is not viable. Has that finding ever been made at any point? No, Your Honor. The parents have never been notified. They've never had an opportunity to be heard. And we don't know where the parents are in all of this. So the eligibility... Can it possibly be a qualifying order? It is not, Your Honor. And the eligibility requires legal conclusions that are based on specific factual findings. There are none. The order... I can tell you it was in the order of June the 15th. Defendants abandoned, neglected, and abused Felipe since the age of eight by stopping to provide safety, shelter, and food for him. And the judge says, based upon the foregoing findings of fact. That's in number eight on page JA-128. The findings of fact made by the District Court of Mecklenburg County. Your Honor... They are findings of fact. It's the only court that's heard this thing and dealt with it. Your Honor, like many courts... I said it like Derek. Your Honor, it's similar... Abandoned, neglected, and abused him. Let's hear the answer. Thank you, Your Honor. If I may finish it. My time is only down to one minute. You will have a chance to answer the question. Like many state courts that deal with issues of domestic violence, issues with abuse of minors, Mr. Perez had the opportunity to go into a court, a juvenile court, ex parte, without the opportunity for those who, against he's alleging these allegations, to be heard and allege everything that Your Honor just said. They're horrific allegations to be sure. What this juvenile court judge did is say, based upon the information from the minor, quote, unquote, he's maintained... Judge Man... She is maintaining the status quo for a limited amount of time. But during that limited amount of time, the parents must be given notice. They're out of the country. This judge said that... Allegedly... I don't know, Your Honor. No one knows. But it's the burden is on Mr. Perez and his attorney or at least attempt to provide notice. He's got an order here that says it's from the district court in Mecklenburg County and the findings of fact are recited. To provide notice... And you're challenging the court order of the district court of North Carolina. We are not challenging... We are not challenging, Your Honor, respectfully, we are not challenging that Mr. Perez's brother did have custody for the remainder of his childhood, which was six days. We are not challenging that order was valid, that for those six days that he was 17 years old, his brother did have custody, that his brother was ordered to provide notice to Mr. Perez's parents and that his brother and his parents, had they received notice, should have appeared for subsequent hearing had Mr. Perez still been under the jurisdiction. What effort was made to notify the parents? We don't know. There's nothing in the record, as far as we can tell, none. Like this record or the record in North Carolina? The only record that's before us now. Okay. So you haven't gone to the district court in Mecklenburg County and to see what's in their record? The burden is on Mr. Perez to tell us. You said there's nothing in the record. I just wanted to make sure of what you meant by the record and you're saying this record in this court, not one down in North Carolina. So we do want to clarify. Your theory, the district court down in North Carolina made all this up. No, absolutely not, Your Honor. We do dispute that Mr. Perez has satisfied all of the remaining eligibility requirements of the SIJ. The only issue before this court are that he has not met the two in the first element, which is the viability of reunification and the custody determination. I don't think he's met either. He's carried his burden on either prong. In the first, in one little eye of 1101-2017. The new NUNC court order. And that's the only order that he's hung his hat on as being the qualifying order. That in conjunction with the NUNC pro-tunc order, which attempts to cure the deficiency of the first order, but it does not. Those are the only two orders that we know of that were entered by the district court in Mecklenburg County. The order of June the 15th, and then the adult pro-tunc order two months later. June 29th and then August 28th. Yes, Your Honor. And neither of those cure the deficiency lacking finality. Custody determination or any findings as to the non-viability of reunification with one or both parents. The agency has not made or has not completed any review as to the other two components of 1101-27J. It stopped at the first. Just one more question. I just want to, is there any, is there any authority related to emergency ex parte TROs and as predicate orders for A-27J that you're aware of? If any, if Fourth Circuit or any other courts addressed an order like this in any reported decisions? Under 1101-27J, yes, Your Honor. Recently, the Reyes v. Cisna case was before this court. Aside from that one? Um, not a decision in the Fourth Circuit, but there is the TVPRA if that's what the court is, are you referring to a case? Yeah, I'm just trying to see if there's any authority holding that an ex parte TRO satisfies A-27J by any other circuit besides the Fourth. I'm familiar with the Fourth Circuit. Are you familiar with that being addressed by any other circuits? Not at the moment, Your Honor. There's a Fifth Circuit case, I think, from August of this year, but it doesn't deal with that topic. I didn't see that. No, the Budetoki case was recently decided that does a good job of describing the requirements for SIJ eligibility and temporary orders or in local princes placement does not satisfy SIJ eligibility and certainly a temporary order such as this one would not. And I'm not aware of any cases, but I can supplement if I do find something to address, Your Honor's question. I'll let us hear from the other side here. Thank you, Your Honor. Mr. Banias. Thank you, Honors. I'll try to keep it short. Judge Wilkinson, you described the timing as fishy. And I want to point out that under 101-A-27J-3, three little I's, the department has to provide consent to grant SIJ status. If you go back and read this court's decision from just this past spring that I also lost in this very courtroom, you'll see the Fourth Circuit gave a good description of what is entailed in the consent requirement. That's where the agency, after looking at the predicate order, can go back and look and go, was this done strictly to get immigration status? And they can choose or choose not to exercise their consent. So I do think the fishy timing you're identifying may be something the agency considers just under a different prong, not whether the agency or whether the custody order must be final or not. The second thing I want to point out is that there is no other case law out there on this, Judge Quattlebaum. Most recently, a court in the Northern District of California entered a preliminary injunction saying that USCIS has overstepped its bounds and done an ultra-virus policy. Admittedly, it's a different policy. I plan on providing a 28-J letter to this court because it just came out last week. But no, this is a blank canvas, Your Honor. No, thank you. I do want to point out, again, I started my argument by saying this is a straightforward question of statutory interpretation. For sure. And I don't want to interrupt, Your Honor. I'm sorry. What you would normally mean by a custody order. But what's important there, Your Honor, is that the statute doesn't use the word order. It simply says an immigrant who has been placed under the custody of an individual, under the custody of an individual. It doesn't say an order. I would imagine there would be situations, maybe in some state courts, it's not written down. I don't know. And that's what Congress has done here. They've relied on an area of law that under the 10th Amendment is strictly in the state courts. And again, I would point you to the excellent language in the OJO decision that says federal courts should give some sort of credence and credibility to the states doing what they do best. You're saying that as if the government's position just ignores the state law. But the government's position here uses state law as the entire framework. The government's decision creates an eligibility requirement not found in the statute, the regulation, or even its policy manual. The government's position is looking at the order and looking at the state law section that was referenced in the order. And the fact that the state law section was referenced in the order is an ex parte, temporary kind of thing, which doesn't bear the earmarks of a definitive custody determination. So the whole, I mean, you're talking about it as if the position of the United States has no, is simply ignoring state law. And no, it's not. It's drawing from state law. And if I may respond. Sure. Two short points, Your Honor. I would urge this court to review the agency's own policy manual because it goes through all of your concerns, Your Honor, and comes out the other way and says, look, we don't care what the actual order is titled. If it places someone under the custody of an individual, that's good. And I just want to read these two provisions. Again, when we talk about the finality, Judge Quattlebaum, you pointed out it doesn't say permanent, the order, it says finality. I think those are synonyms. But finality required under their policy manual is that the order devalued at the time of filing must determine the court intends that the child will not reunify with at least one parent until their age of majority. Here, that order says, this is good until the next hearing, and that's when you reach majority. The same thing is there for the permanency. Where are you in the policy manual? I'm on page 187 of the JA, Your Honor. That's right. And the government doesn't even require a final order. It requires something that is intended to last until the child ages out of that particular court's jurisdiction. The other thing I would really point you to, Your Honors, is it's a 2011 proposed rulemaking. Now, I'm aware it never became final, so maybe it's just good reasoning. But you will see a vastly different explanation, interpretation of the very statutes than what's being argued here. And that is the same agency speaking out of a different side of its mouth. And Judge Wilkinson, I know my time is over, but this is not a case about separation of children. This is not people approaching the border and one parent being taken here and a child being taken here. This is a kid, a child running away. It's not a case of separating families because all of this has been done without the knowledge of the parents and without, as far as I can see, an attempt, much less a successful attempt, to bring them in. As a parent, you're talking about as a child. As a parent, I don't want my custody rights over child determined with me completely or my wife being completely absent. That is family separation. All right, we've chewed the bone. Do you have one last comment you want to make? I don't think so, Your Honor. Well, go ahead because I'll let you have the last word. Your Honor, I would just say that Congress has provided this for abandoned and abused children. There's also other provisions under the Hague Convention that allow the parents to come in and challenge it. And for that reason, we'd ask you... But in the discussion of the viability of parents, which is also part of the statute in which you keep talking about custody and you keep ignoring the question of the parents, that's in the statute. Okay, I'm getting the last word. Thanks, Your Honor.
judges: J. Harvie Wilkinson III, Robert B. King, A. Marvin Quattlebaum Jr.